## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

PFM Air, INC.,
GOEDICKE INC. OF AMERICA,
PETER COLLINSON FAMILY, LP,
AB CONSULTING, INC.,
CHUCK HOFFMAN, ELMER
LINWOOD JOHNSON, JACK
WILLIAMS, and DOUG SHEFFIELD,

        Plaintiffs,                Case No.: 8.08-cv-392-T-17-MSS

v.

DR.ING.HC.F.PORSCHE A.G.,
PORSCHE CARS NORTH
AMERICA, INC.,[1] PORSCHE
AVIATION PRODUCTS, INC.,
and GARY BUTCHER,

        Defendants.

_____/

## ORDER

    This cause is before the Court on Defendants, Porsche Cars North America, Inc.

and Porsche Aviation Products, Inc.'s, motion to dismiss for improper venue (Doc. No.

13) and motion for a more definite statement (Doc. No. 14); Defendant Gary Butcher's

motion to dismiss for lack of personal jurisdiction (Doc. No. 21); the Plaintiffs' opposing

responses to all three motions (Doc. Nos. 22, 23, and 30), and Defendant

Dr.Ing.Hc.F.Porsche A.G.'s motion to join Defendants, Porsche Cars North America, Inc.

---

[1] This Court notes that the Plaintiffs bring the action against Defendant, Porsche Cars North America, Inc.; however, the Defendant, in its motions, refers to itself as Porsche Cars North America, LLC. For the sake of consistency, this Court will refer to the Defendant as Porsche Cars North America, Inc., or, PCNA.

and Porsche Aviation Products, Inc.'s, motion to dismiss for improper venue (Doc. No. 42).

## Factual Background

The following facts are taken from the Plaintiffs' Complaint in this cause and are accepted as true only for the purpose of resolving the pending motions.

The Complaint was brought by nine Plaintiffs. Plaintiffs, PFM Air, Inc. ("PFM Air") and Goedicke Inc. of America ("Goedicke"), are Florida corporations with their principal place of business in Manatee County, Palmetto, Florida. PFM Air owns three (3) Mooney PFM aircrafts and Goedicke owns two (2). The remaining seven Plaintiffs each own one (1) Mooney PFM aircraft. Plaintiff, Peter Collinson Family L.P. ("Collinson"), is a North Carolina limited partnership with its principal place of business in North Carolina. Plaintiff, AB Consulting, Inc. ("AB Consulting"), is an Ohio corporation with its principal place of business in Ohio. Plaintiff, Pacific Aeromarine, Inc. ("Pacific Aeromarine"), is a California corporation with its principal place of business in California. Plaintiff, Doug Sheffield ("Sheffield"), is a citizen of Colorado. Plaintiff, Linwood Elmer Johnson ("Johnson"), is a citizen of South Carolina. And lastly, Plaintiffs, Chuck Hoffman ("Hoffman") and Jack Williams ("Williams"), are citizens of California. The nine Plaintiffs combined own twelve (12) Mooney PFM aircrafts.

There are four Defendants in this action. Defendant, Dr.Ing.hc.F.Porsche A.G. ("PAG"), is a German corporation with its principal place of business in Stuttgart, Germany. PAG is the parent company of Defendants Porsche Cars North America, Inc. ("PCNA") and Porsche Aviation Products, Inc. ("PAP"). Both PCNA and PAP are Delaware corporations with their principal place of business in Atlanta, Georgia. Lastly,

Defendant Gary Butcher ("Butcher") is a citizen of Nevada. Butcher was an employee of PAP from November 1, 1987 to May 31, 2005, and of PCNA from June 1, 2005 to present.

The Plaintiffs brought this action before this Court based on diversity jurisdiction under 28 U.S.C. Section 1332(a). The Plaintiffs and Defendants are diverse and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. The Plaintiffs also assert that venue is proper before this Court because a substantial part of the events, acts, and omissions giving rise to their claims occurred in the Middle District of Florida.

In 1985, Porsche introduced the PFM 3200 aircraft engine ("Porsche engine"), a close derivative of the Porsche 911 automobile engine. The Porsche engines were manufactured at PAG's headquarters in Stuttgart, Germany. Hoping to benefit from the illustrious Porsche name brand, Mooney Aircraft Corporation ("Mooney"), an aircraft frame manufacturer, began to install the Porsche engine in their aircrafts. Mooney began selling the Porsche-powered Mooney PFM aircrafts ("Mooney aircrafts") in 1987. The Mooney aircrafts have four seats, a fixed wing, and a single engine.

The Plaintiffs allege that the Porsche engines were advertised as high performance engines with unparalleled manufacturer support. PAG, PCNA and PAP's (collectively "Porsche Defendants") marketing plan included guaranteed manufacturer support through a unique warranty program designed to add value to the Mooney aircrafts. Apparently, the Porsche engine's premium derived in part from this unmatched manufacturer warranty program. As long as the owner kept up with the required intermittent maintenance inspections, the warranty program "continued in effect

indefinitely, and actually locked PAP into a predetermined engine replacement price for ten years subsequent to its first retail price." Defendant Butcher, a PAP employee at the time, headed the Porsche engine's warranty program, which operated primarily out of PAP's headquarters in Atlanta, Georgia. The Porsche engine's replacement parts were also stored and maintained there.

Some time shortly after July 1990, PAG announced that it would no longer manufacture the Porsche engines and "began orchestrating its exit from the aviation industry altogether." Once this decision was made, the Porsche Defendants, through Butcher, assured its customers that PAP would maintain its supply of replacement parts in order to continue the viability of the Porsche engine's warranty program. The Porsche Defendants and Butcher continued to make these assurances until 1998.

On October 8, 1998, PAG issued a Service Bulletin attributing several incidents of mid-air engine failures to faulty valve springs in the Porsche engines.[2] PAG, however, assured customers that it was developing a newly designed valve spring and that it would install them in all the Porsche engines once the valve springs became available. The new valve springs never became available.

Shortly after issuing its Service Bulletin, PAG announced that, beginning July 31, 2005, it would no longer manufacture replacement parts for the Porsche engines, effectively rendering the Porsche engine's warranty program defunct. Moreover, without replacement parts, it would become considerably more difficult for Mooney aircraft owners to maintain their aircraft's compliance with airworthiness regulations.

---

[2] Apparently, the faulty valve springs was not the only defect the Porsche engines had. On February 6, 2003, the German aviation regulatory agency issued a directive requiring mandatory inspections of drive shaft teeth due to corrosion of the gear wheels.

The Plaintiffs allege that Porsche Defendants knew about the dangerous defects all along. Shortly after the Porsche engines were being installed into the Mooney airframes, PAG engineers allegedly notified PAG executives, including the Managing Director and the Assistant Managing Director of Aviation, about the design defects. The Porsche engines had "devastating complications that went overlooked or were ignored at its initial stages of research and development." The Plaintiffs assert that the Porsche Defendants purposefully concealed this information from its customers in order to carry out their hidden agenda – to exit the aviation industry and discharge all liabilities associated with the Porsche engine, including the warranty program. The Porsche Defendants knew that servicing these defects under the warranty program would be economically crippling.

To facilitate this hidden agenda, the Porsche Defendants allegedly directed Defendant Butcher to sabotage the engine belonging to a certain Mooney aircraft owner so that it would overheat. Moreover, Defendant Butcher allegedly made adjustments to the service schedules for Mooney aircraft owners so that their Porsche engines would not be properly and timely serviced. Meanwhile, the Porsche Defendants and Butcher, in order to make replacement parts less accessible, conspired to drive up the prices of replacement parts making their costs prohibitively expensive.[3] Then, on the same day that PAG announced it was discontinuing the production of replacement parts, the Porsche Defendants destroyed their entire parts supply. Plaintiffs allege that the Defendants committed these tortious acts so that the Mooney aircrafts would be

---

[3] It is unclear why the Defendants drove up the prices of the replacement parts since it would seem the parts would be covered under the warranty program.

"grounded," which, in turn, would somehow insulate the Defendants from liabilities stemming from the warranty program.

But notwithstanding their economic concerns, the Porsche Defendants decided to implement a conversion program under the warranty program. Shortly after the 1998 announcement that they were ceasing production of replacement parts, the Porsche Defendants allegedly solicited bids from aircraft engine conversion companies. An engine conversion involves simply replacing the existing engine with a different one that is still compatible with the airframe. Mod Works, Inc. ("Mod Works"), a Florida corporation with its principal place of business in Charlotte County, Punta Gorda, Florida, won the bid. All conversions were to take place at Mod Works' headquarters in Punta Gorda, Florida. Porsche Defendants notified their customers that the Porsche engine would be replaced with a Continental engine, that Porsche would contribute $60,000.00 toward the conversion, and that Mod Works would soon send them a conversion offer. The Porsche Defendants also told customers that the new aircrafts would appreciate in market value and have increased performance.

In January 2002, Mod Works sent all Mooney aircraft owners a conversion offer and echoed the promises that the new aircrafts would appreciate in value and have better performance. Two PAG executives and Defendant Butcher were listed in advertisements for the conversion process as "team members" available for customer support.

The Plaintiffs also allege that the conversion process provided the Porsche Defendants another means by which they could carry out their plan of exiting the aviation industry unscathed. The Porsche Defendants maintained tight control over the

conversion process because they feared the Porsche engine's technical data, and, thereby, the Porsche engine's numerous defects would become public. PAG executives and Butcher oversaw the conversion process. Butcher, in particular, spent a considerable amount of time at Mod Works in Punta Gorda, Florida, coordinating drop-off dates for the Mooney aircrafts. Porsche Defendants "went on a crusade to reclaim all the [Porsche] engines, while misrepresenting crucial facts to aircraft owners and concealing the dangers associated with the [Porsche] engine's design defects."

The deadline by which the Mooney aircraft owners had to get their aircrafts to Mod Works' facilities in Punta Gorda, Florida, for the engine conversion was July 30, 2004. In August 2004, with only a few conversions completed, Hurricane Charley destroyed the Mod Works facilities, making the completion of the conversion process impossible. Shortly thereafter, the Porsche Defendants enlisted Lone Star Aero ("Lone Star"), a Texas-based conversion company, to finish the remaining conversions.

Unfortunately, the conversions did not produce a better aircraft as Butcher, Mod Works, and the Porsche Defendants had previously represented that it would. In fact, to the contrary, the conversion produced a defective aircraft with little or no resale value. For instance, the conversion made the aircraft significantly heavier. Consequently, in order to comply with FAA weight regulations, the pilot was forced to fly with a decreased fuel supply and with no passengers to make up for the increased weight. The Plaintiffs allege that the "new" aircraft came out defective because the Porsche Defendants refused to hand over to Lone Star the Porsche engine's technical data, again, fearing that the design defects would become apparent.

On October 26, 2007, PAG surrendered its type certificate[4] for the Porsche engine to the European Aviation Safety Agency ("EASA"). It did not, however, surrender the technical data. This way, a potential successor to the Porsche engine would be unable to re-engineer the Porsche engine or even manufacture replacement parts for it. The Plaintiffs allege that, ultimately, the Porsche Defendants attempted to ground all the Mooney aircrafts, run the statute of limitations, and discharge all liability associated with the defective Porsche engine.

Plaintiffs, PFM Air, Goedicke, Collinson, AB Consulting and Williams, purchased their Mooney aircrafts before PAG's Service Bulletin was issued in 1998. These Plaintiffs assert that they purchased the Mooney aircrafts because of the illustrious Porsche brand as well as the unparalleled warranty program that came with the Porsche engine. They complain that essentially they were "duped" into purchasing a defective aircraft. Plaintiffs, Pacific Aeromarine, Hoffman, and Johnson, purchased their Mooney aircrafts after the conversion with Mod Works was announced, but before the aircrafts actually underwent the conversions. This latter group of Plaintiffs asserts that it relied on the Porsche Defendants' and Butcher's assurances that the post-conversion aircrafts would be superior in value and performance to the pre-conversion aircrafts.

All nine Plaintiffs complain that they were defrauded into purchasing an aircraft with "limited or no functional use and virtually zero resale value." Accordingly, they bring twelve Counts against the Defendants: Count 1) Fraud in the Inducement, 2)

---

[4] Similar to a patent, a type certificate is awarded by an aircraft regulatory agency to an aircraft engine manufacturer after the manufacturer has established that its aircraft engine has met all of the agency's airworthiness requirements. The type certificate is the proprietary property of the manufacturer indefinitely. Accordingly, the manufacturer becomes the only entity that can manufacture the engine and its parts. However, with the approval of the regulatory agency, the manufacturer can either transfer its type certificate to another manufacturer or authorize other manufacturers to produce replacement or modification parts for the engine. PAG's type certificate for the Porsche engine, although obtained in Germany, was valid in the U.S. under a reciprocal treaty between the two countries.

Negligence, 3) Gross Negligence, 4) Misrepresentation, 5) Breach of Express Warranty, 6) Breach of Implied Warranty, 7) Violation of the Florida Deceptive and Unfair Trade Practices Act, 8) Strict Product Liability, 9) Conspiracy to Commit Fraud, 10) Conspiracy to Fraudulently Conceal, 11) Promissory Estoppel, and 12) Unjust Enrichment/Restitution. The Plaintiffs request that the Defendants be estopped from relying on any statutes of limitations because the Defendants concealed the defects and the Plaintiffs found out about them only recently. Plaintiffs also request an order prohibiting the destruction or spoliation of evidence.

Lastly, the Plaintiffs request aggregate damages of at least one hundred million dollars in actual damages, plus punitive and/or exemplary damages, reasonable attorneys' fees and costs of this litigation.

## Procedural Background

On February 27, 2008, the Plaintiffs filed the Complaint and Demand for Jury Trial against all four Defendants, Dr.Ing.hc.F.Porsche A.G., Porsche Cars North America, Inc., Porsche Aviation Products, Inc., and Gary Butcher (Doc. No. 1). On March 20, 2008, the Defendants, PCNA and PAP, filed a motion to dismiss for improper venue (Doc. No. 13) and a motion for a more definite statement (Doc. No. 14), and, on March 31, 2008, Defendant Butcher filed a motion to dismiss for lack of personal jurisdiction (Doc. No. 21). On April 3, 2008, the Plaintiffs filed a response to Defendants, PCNA and PAP's, motion to dismiss and for a more definite statement (Doc. Nos. 22 and 23). Then on April 14, 2008, Defendants, PCNA and PAP, filed a reply to the Plaintiffs' response to the Defendants' motion to dismiss for improper venue (Doc. No.

9

26). Finally, on April 18, 2008, the Plaintiffs filed a response to Defendant Butcher's motion to dismiss for lack of personal jurisdiction (Doc. No. 31).

## Venue

Defendants, Porsche Cars North America, Inc. ("PCNA") and Porsche Aviation Products, Inc ("PAP"), move to dismiss for improper venue. Defendants contend that the facts alleged by the Plaintiffs are inadequate to establish proper venue in the Middle District of Florida. They contend that the facts alleged pertaining to the Defendants involve conduct outside the State of Florida. They do not, however, suggest which venue outside this state would be the proper venue. The Plaintiffs, on the other hand, argue that a substantial part of the events or omissions giving rise to their claims occurred in this District. We agree.

A district court should not dismiss a complaint unless it appears, "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Conley v. Gibson*, 355 U.S. 41, 45 (1957). In deciding a motion to dismiss, the court may only examine the four corners of the complaint. *See Rickman v. Precisionaire, Inc.*, 902 F. Supp. 232, 233 (M.D. Fla. 1995). "The threshold sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low." *Ancata v. Prison Health Serv., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985).

Particularly on a Federal Rule of Civil Procedure 12(b)(3) motion to dismiss for improper venue, the plaintiff bears the burden of proving that venue is proper in the chosen forum. *Brown v. Brown*, 2007 WL 949424 at *2 (M.D. Fla. March 27, 2007) (citing *Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004)). Unless contradicted by the defendant's affidavits, the court accepts all allegations of the

complaint as true and draws all reasonable inferences and resolves all factual conflicts in favor of the plaintiff. *Id.*

Venue based solely on diversity of citizenship is governed by 18 U.S.C. 1391(a). Venue is proper under subsection (1) where "any defendant resides, if all defendants reside in the same State," or under subsection (2) where "a substantial part of the events or omissions giving rise to the claim occurred," or under subsection (3) where "any defendant is subject to personal jurisdiction at the time the action is commenced." We find that venue for the instant action is proper under Section 1391(a)(2). This is not to say that venue is improper under subsections (1) or (3).

To determine whether a "substantial part of the events or omissions giving rise to the claim occurred" in a particular district, the court should consider "only those acts and omissions that have a close nexus to the wrong." *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1372 (11th Cir. 2003). When "material acts or omissions within the forum bear a 'close nexus' to the claims, they are properly deemed 'significant' and, thus, substantial, but when a close nexus is lacking, so too is the substantiality necessary to support venue." *Daniel v. American Board of Emergency Medicine*, 428 F.3d 408, 433 (2d Cir. 2005) (citing *Jenkins Brick Co.*, 321 F.3d at 1372).

Moreover, "§ 1391(a)(2) does not limit venue to the place where all or most of the events giving rise to the claim occurred; the statute places venue in every district where a 'substantial part' of the events occurred." *Waters Edge Living, LLC v. RSUI Indemnity Co.*, 2007 WL 1021359 at *4 (N.D. Fla. March 31, 2007).

This Court is satisfied that a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in the Middle District of Florida. Under the direction

of their German parent company PAG, PCNA and PAP promoted the Porsche engines and the warranty program in the United States. At relevant times, Butcher was employed by PAP as the service director in charge of the Porsche engine's warranty program. It appears that venue was established primarily, but not only, as a result of Porsche Defendants' decision to implement the engine conversion plan in this district, which allegedly was undertaken to further an illegal agenda. Therefore, the Court finds that the conversion plan consisted of acts that bear a close nexus to the Plaintiffs' claims and are properly deemed substantial for purposes of Section 1391(a)(2). *See Jenkins Brick Co.*, 321 F.3d at 1372.

According to the Complaint, the Porsche Defendants illegally concealed a design flaw in the Porsche engine, which they discovered back when the engine made its debut in 1985, and illegally acted in order to walk away as unscathed as possible. Once the Porsche Defendants discovered the engine flaw and determined that an engine conversion would be more cost-effective than servicing all the engines under its warranty program, they enlisted Mod Works to carry out the engine conversions. Mod Works is an engine conversion company based in Charlotte County, Punta Gorda, Florida, a county located in this district. All conversions were to take place at the Mod Works facilities in Punta Gorda, Florida. Several Mooney aircrafts were converted including a few belonging to the Plaintiffs.

Defendant Butcher, the service director for PAP at the time, was in charge of the Porsche engine's warranty program. Before a hurricane destroyed the Mod Works' facilities, Defendant Butcher allegedly spent a considerable amount of time in Punta Gorda, Florida providing logistical support to Mod Works and the Plaintiffs, specifically,

coordinating drop-off dates. Moreover, Defendant Butcher continued to assure the Mooney aircraft owners, including PFM Air and Goedicke, that the converted aircraft would come out superior in value and performance. Defendant Butcher oversaw the conversion process at the behest of the Porsche Defendants.

The Complaint alleges that, unbeknownst to the Plaintiffs, this conversion plan was part of the Porsche Defendants' larger hidden and illegal agenda to conceal the engine defects and to discharge all existing and potential liabilities under the Porsche engine's warranty program.  The Complaint further alleges that one reason why the Porsche Defendants, through Butcher, persistently maintained close supervision of the conversion process was to make sure the technical data of the Porsche engine would not become public. (Apparently, maintaining close supervision of the conversion process was an unusual practice in the industry.) As a result, contrary to the representations made by Butcher and the Porsche Defendants, the conversions did not produce a better performing aircraft with a higher market resale value. In fact, the "new" aircraft came out flawed with little or no resale value.

Accordingly, this Court finds that, taking these allegations as true, the Complaint meets the "exceedingly low" burden required to establish that a substantial part of the events giving rise to the Plaintiffs' claims occurred in the Middle District of Florida. *Ancata*, 769 F.2d at 703; § 1391(a)(2).  Therefore, venue is proper, and the Defendants' motion to dismiss based on improper venue is denied.

## A More Definite Statement

Defendants, Porsche Cars North America, Inc. ("PCNA") and Porsche Aviation Products, Inc ("PAP"), move for a more definite statement. This Court denies the motion, and, in so doing, will address only the Defendants' argument that fraud claims require a heightened pleading standard. As to the Defendants' other arguments, we find that Federal Rule of Civil Procedure 8(a)'s liberal pleading standard gives the Defendants sufficient notice to prepare an answer, frame discovery, and defend against the charges. *In re White Metal Rolling & Stamping Corp.*, 222 B.R. 417, 429 (Bankr. S.D.N.Y. 1999).

Federal Rule 9(b) must be read in conjunction with the liberal notice pleading standard of Rule 8, which states that a pleading setting forth a claim for relief need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997). Rule 9(b) will be satisfied if the complaint presents the fraudulent statements, their content, who made them, and the manner of their misleading. *Continental Ins. Co. v. Roberts*, 2006 WL 354419 at *4 (S.D. Fla. February 15, 2006) (citing *Flamenbaum v. Orient Lines. Inc.*, 2004 WL 1773207 at *6 (S.D. Fla. July 20, 2004)).

According to the Complaint, soon after the Porsche engine made its debut in 1985, PAG's own engineers notified the Porsche Defendants about the design defect in the Porsche engine. The Porsche Defendants allegedly decided to conceal this defect and continued to promote, advertise, and market the Porsche engine as one-of-a-kind. The defect was finally made public in 1998 as a result of several mid-air engine failures. Allegedly, this was not the only defect the Porsche Defendants knew about and

concealed. Another defect was revealed in 2003. Because of the concealment, the Plaintiffs purchased a defective aircraft. Moreover, promises were made that replacement parts would still be available and the warranty program would continue. The Porsche Defendants assured its customers in various ways that the engine conversion would produce a better aircraft. It did not. In sum, the Porsche Defendants sold their airplanes knowing they were defective, and then attempted to withdraw from the aviation industry without any consequences for their actions. These allegations adequately establish the Plaintiffs' claims of fraud and conspiracy to fraud.

Accordingly, this Court finds that the Complaint satisfies Rule 9(b)'s heightened standard for the fraud claims, *See Continental Ins. Co.*, 2006 WL 354419 at *4, and, therefore, the Defendants' motion for a more definite statement is denied.

## Personal Jurisdiction

Defendant Gary Butcher ("Butcher"), a non-resident Porsche employee, moves to dismiss for want of personal jurisdiction. The Complaint alleges that Defendant Butcher committed intentional tortious acts causing harm in the State of Florida. Defendant Butcher argues that his only connections to Florida were established through his capacity as a Porsche employee, and, therefore, he is protected under the corporate shield doctrine. This Court disagrees and finds that Defendant Butcher is subject to personal jurisdiction in the State of Florida.

Initially, the burden of establishing jurisdiction over a non-resident Defendant lies with the Plaintiffs. *Black v. Bryant*, 905 F. Supp. 1046, 1051 (M.D. Fla. 1995) (citing *Morris v. SSE, Inc.,* 843 F.2d 489 (11th Cir. 1988)). Only after a defendant raises a meritorious challenge to the jurisdiction of the court by the use of affidavits, documents

or testimony, does the burden shift back to the plaintiff to prove jurisdiction through affidavits, testimony or documents. *Jet Charter Service, Inc. v. Koeck*, 907 F.2d 1110, 1111 (11th Cir. 1990).

The determination of personal jurisdiction over a non-resident defendant requires the Court to engage in a two-part analysis. *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 855 (11th Cir. 1990). In a federal diversity action such as this, a district court first considers the presence or absence of personal jurisdiction according to the law of the state in which that court is situated. *Pizzabiocche v. Vinelli*, 772 F. Supp. 1245 (M.D. Fla. 1991). In this case, Plaintiffs assert that this court has personal jurisdiction over Defendant Butcher pursuant to Florida Statutes, Section 48.193, Florida's Long-Arm Statute. Therefore, the Court first inspects Florida's Long-Arm Statute to consider the jurisdictional issue.

Upon finding a basis for the assertion of personal jurisdiction under the applicable state statute, this Court must consider the second prong of the jurisdictional test which is a Due Process analysis. This Due Process analysis is also a two-pronged inquiry requiring the court to initially determine whether sufficient minimum contacts exist between the Defendant and the forum state to satisfy the Due Process Clause of the Fourteenth Amendment. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). Finally, the second prong under the Due Process analysis requires this Court to determine that the maintenance of a suit is reasonable and does not violate "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Only if both prongs of the overall jurisdictional test are satisfied may the Court exercise personal jurisdiction over non-resident Defendant Butcher. *Madara*, 916 F.2d at1516.

The Court now addresses whether a tort was committed in the State of Florida pursuant to Florida Statutes, Section 48.193(1)(b), as asserted by the Plaintiffs. Section 48.193 provides in pertinent part:

> (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself and, if he is a natural person, his personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts: (b) Committing a tortious act within this state.

Florida Statutes, Section 48.193 (1995).

Defendant Butcher argues that he is not subject to personal jurisdiction in Florida because his only connection to this case is that he was an employee of PAP during the relevant times. He argues that his travels to Florida and communications with customers in Florida during the relevant times were strictly within the scope of his authority as a PAP employee. Moreover, Defendant Butcher declares that he has never committed a tort in Florida and that he has no other connections to Florida. Thus, the Defendant concludes that he is protected under the corporate shield doctrine.

For a non-resident corporate officer to be subject to personal jurisdiction in Florida, it must be established that the officer acted not only in his capacity as agent for the corporation, but that he acted individually, for his own benefit, and, thereby, caused harm in the forum state. *Doe v. Thompson,* 620 So.2d 1004, 1006 (Fla. 1993). In the *Doe* case, the complaint alleged simple negligence on the part of the non-resident corporate director and did not allege that his actions were particularly targeted to cause

17

harm in Florida. Thus, the Court concluded that the defendant was protected by the corporate shield doctrine and that he could not be haled into court in Florida in his personal capacity. The *Doe* Court specifically noted, however, that in accordance with Florida Statutes, Section 48.193(1)(b), a non-resident corporate officer may be haled into court in Florida if it is alleged that he personally committed an intentional tort expressly aimed at the plaintiff in the forum state. *Id.* at 1006, n. 1.

In *Allerton v. State Department of Insurance*, 635 So.2d 36 (Fla. 1st DCA 1994), the Court applied *Doe*'s rationale to a situation where a non-resident corporate officer was alleged to have committed an intentional tortious act. The *Allerton* Court found that the defendant in that case was subject to personal jurisdiction in Florida because he participated in a scheme calculated specifically to defraud a Florida insurance company. *Id.* at 40. The Court found that when a non-resident corporate officer engages in intentional conduct designed to cause injury to a plaintiff in the forum state, the corporate shield doctrine will not protect that defendant from exposure to personal jurisdiction in that state. *Id.* at 39.

This Court finds that Defendant Butcher's alleged intentional conduct was expressly aimed at the forum state and that such conduct is alleged to have caused harm in the state of Florida. If the facts alleged are taken as true, as they must be here, there is little doubt that Defendant Butcher intentionally committed torts against at least some of the Plaintiffs located in Florida. According to the Complaint, Defendant Butcher, at the behest of the Porsche Defendants, manipulated the engine of a certain Mooney aircraft owner so that it would overheat. In addition, Defendant Butcher made "adjustments" to the service schedules for Mooney aircraft owners so that their Porsche

engines would not be properly and timely serviced. All the while, Defendant Butcher continued to assure customers that replacement parts would remain available and the warranty program would continue to support the Porsche engine. Lastly, it appears Defendant Butcher was also closely involved in the general promotion of the Porsche engine while concealing the engines defects.

It is hard to imagine that Butcher was unaware of the engine defects, particularly given that he was the point man in charge of the Porsche engine warranty program. Regardless, it is clear that Defendant Butcher's tortious acts in furtherance of the Porsche Defendants' alleged hidden agenda constituted intentional conduct calculated to cause injury to a plaintiff in the forum state. *Calder v. Jones*, 465 U.S. 783, 791 (1984). Therefore, upon review of the parties' memoranda and supporting documents, this Court concludes that the Plaintiffs have alleged sufficient facts to overcome the corporate shield defense, and, thereby, have met the first prong of the jurisdictional test.

The Court now must now address the second prong and determine whether the exercise of personal jurisdiction over Defendant Butcher comports with due process under federal constitutional law. First, the Court must determine whether sufficient minimum contacts exist between Defendant Butcher and the State of Florida.

The Eleventh Circuit employs a three-prong test to determine whether a defendant has established sufficient contacts with the forum state to comply with the Fourteenth Amendment's due process requirement: (1) the contacts must be related to the plaintiff's cause of action; (2) they must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the state; and (3) the defendant's contacts with the state must be such that the defendant should

reasonably anticipate being haled into court there. *Kim v. Keenan*, F. Supp. 2d 1228, 1235 (M.D. Fla. 1999) (citing *Posner v. Essex Insurance Company*, 178 F.3d 1209, 1220 (11th Cir. 1999)).

In the instant case, Defendant Butcher's alleged contacts with the State of Florida relating to the Plaintiffs' causes of action can be considered "purposefully directed" to Florida such that it would reasonably anticipate being haled into court there. As noted above, Defendant Butcher at the behest of the Porsche Defendants purposefully sabotaged a certain owner's Porsche engine and adjusted the service schedules for other aircraft owners so that the engines would not be properly and timely serviced. Moreover, Defendant Butcher purposefully directed himself toward the State of Florida through his travels to Mod Works and his considerable time spent there providing logistical support. Therefore, this Court finds that Defendant Butcher did have the sufficient minimum contacts with Florida to support a finding of compliance with the Fourteenth Amendment's due process requirement.

Lastly, this Court must determine whether the exercise of personal jurisdiction over Defendant Butcher would offend "traditional notions of fair play and substantial justice." In making its determination, this Court shall consider such factors as the "burden on the Defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Kim*, 71 F. Supp. 2d at 1236 (quoting *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). In *McGee v. International Life Insurance Co.*, 355 U.S. 220, 222-23 (1957), the Supreme Court noted that the limits imposed on state jurisdiction by the Due Process Clause have been substantially relaxed over the years. The *McGee* Court emphasized that the transformations in the American economy such

as modern transportation and communication have made it "much less burdensome for a party sued to defend himself in a State where he engages in economic activity." *Id.* In *World-Wide Volkswagon Corp.*, however, the Supreme Court suggested that the 'reasonableness' of asserting jurisdiction over the defendant must be assessed in the context of our federal system of government and stressed that the Due Process Clause ensures not only fairness, but also "the orderly administration of the laws." 444 U.S. 286, 294-95 (quoting *International Shoe Co. v. Washington*, 326 U.S., 310, 317-319 (1945)).

Applying these principles to the case at hand, the Plaintiffs' interests in obtaining relief are obvious, and this Court finds in the record before it that no significant hardships would result from exercising personal jurisdiction over Defendant Butcher. Indeed, Defendant Butcher, a resident of Nevada, would have the expense of traveling to Florida to defend this lawsuit. However, this Court takes judicial notice of a similar cause of action against Defendant Butcher in the Northern District of Texas to which he has filed an answer. If Defendant Butcher is able to defend himself in Texas, we find no reason why he would not be able to defend himself in Florida. Plus, the record contains no evidence to suggest that requiring so would pose significant hardships on the Defendant. Therefore, this Court finds that the interests of justice do not preclude this Court from asserting personal jurisdiction over Defendant Butcher.

## Conclusion

This Court finds that venue was established primarily, but not only, by the Porsche Defendant's decision to carry out the conversion plan in the Middle District of Florida. The conversion plan consisted of acts that bear a close nexus to the Plaintiffs' claims and are properly deemed substantial for purposes of Section 1391(a)(2).

21

Moreover, this Court is satisfied that the Complaint meets Rule 9(b)'s heightened standard for the fraud claims and, therefore, deny the Defendants' motion for a more definite statement. Lastly, this Court finds that the exercise of personal jurisdiction over Defendant Butcher is appropriate under Florida's Long-Arm Statute and the U.S. Constitution. Accordingly, it is:

**ORDERED** that Defendant Dr.Ing.Hc.F.Porsche A.G.'s motion for joinder in motion to dismiss for improper venue (Doc. No. 42) is **GRANTED**; Defendants, Porsche Cars North America, Inc., Porsche Aviation Products, Inc., and Dr.Ing.Hc.F.Porsche A.G.'s, motion to dismiss for improper venue and motion for a more definite statement (Doc. Nos. 13, 14, and 42) are all **DENIED**; and Defendant Gary Butcher's motion to dismiss for lack of personal jurisdiction (Doc. No. 21) is **DENIED**. The Defendants shall file answers to the Complaint within ten (10) days of this order.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 9th day of July, 2008.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

cc: All Parties and Counsel of Record