UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PFM AIR, INC., *et al.*,
     Plaintiffs,

     v.                              Case No.: 8:08-CV-392-T-17MAP

DR.ING.HC.F.PORSCHE A.G., *et al.*,
     Defendants.
_____/

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE is before this Court on Defendants', Dr. Ing. hc. F. Porsche Aktiengesellschaft ("PAG"), Porsche Cars North America, Inc. ("PCNA"), Porsche Aviation Products, Inc. ("PAPI"), and Gary Butcher ("Butcher") (collectively "Porsche"), Motion for Summary Judgment and Supporting Memorandum of Law (Doc. 184); Plaintiffs', PFM Air, Inc. ("PFM"), AB Consulting ("AB"), Goedicke Inc. of America ("Goedicke"), Pacific Aeromarine, Inc. ("Pacific"), Peter Collinson Family, LP ("Collinson"), Chuck Hoffman ("Hoffman"), and Elmer Linwood Johnson ("Johnson") (collectively "PFM Plaintiffs"), Memorandum in Opposition to Defendants' Motion for Summary Judgment (Doc. 205); and Plaintiffs', Jack Williams ("Williams") and Doug Sheffield ("Sheffield") (collectively "Williams and Sheffield"), Response to Defendants' Motion for Summary Judgment and Supporting Memorandum of Law (Doc. 212) For the reasons set forth below, Porsche's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART.**

I.     Background

A thorough procedural and factual background has previously been established in the Report and Recommendation (Doc. 158) to this Court on August 4, 2010. This Court, finding no inconsistencies within the existing record, and the previously established background in the Report and Recommendation, hereby incorporates the previously established procedural and factual background herein.

*1. The Parties*

Plaintiffs PFM Air, Inc., Goedicke Inc. of America, Peter Collinson Family, LP, AB Consulting, Inc., Pacific Aeromarine, Inc., Elmer Linwood Johnson, Chuck Hoffman, Doug Sheffield, and Jack Williams, own Mooney Aircraft containing Porsche PFM engines. PFM Air and Goedicke are Florida corporations with their principal place of business in Palmetto, Florida. The remaining corporate Plaintiffs are entities formed under the laws of states other than Florida and have their principal places of business outside of Florida. The individual Plaintiffs are citizens of states other than Florida.

Defendant PAG is a corporation organized under the laws of Germany with its principal place of business in Stuttgart, Germany. PAG is the parent company of Defendants Porsche Cars North America, Inc. ("PCNA") and Porsche Aviation Products, Inc. ("PAPI"). Those subsidiaries are corporations organized under the laws of Delaware, with their principal places of business in Atlanta, Georgia. Collectively, these three defendants will be referred to as Porsche. Defendant Gary Butcher is a citizen of Nevada and at all relevant times was an employee of PCNA or PAPI.

*2. Factual and Procedural History*

PAG manufactured the Porsche PFM engine in Germany from the mid 1980s until about 1989. (Doc. 113 at 121; Doc. 43 at ¶ 3.) To engage in the manufacture and sale of aircraft engines, PAG had to obtain a Type Certificate ("TC") from the relevant regulatory authorities, including the Federal Aviation Administration ("FAA"). As owner of the TC, Porsche was entitled to manufacture the engine and replacement parts or authorize someone else to manufacture parts subject to the approval of the relevant regulatory authority. (Doc. 135 ¶¶ 25- 26.)

PAPI was PAG's distribution agent in the United States for the Porsche PFM engines. (Doc. 113 at 88.) About forty Porsche PFM engines were sold to Mooney for installation in their aircraft in Texas. (Doc. 113 at 88, 91.) Although the paperwork for the engine sales went through PAPI, the engines went

2

directly from Germany to Mooney. (Doc. 113 at 88.) The Mooney aircraft were marketed and offered for sale in various locations throughout the United States, including Florida. (Doc. 113 at 136.)

The Porsche PFM engines were covered by a Customer Assurance and Warranty Program. (Doc. 134-2.) The PFM warranty program automatically transferred with the sale of the aircraft subject to compliance with specified terms. (Doc. 134-2 at 8.) The warranty program was provided in the United States by PAPI. (Doc. 134-2; Doc. 113 at 89-90.) PAG stopped production of the engine in about 1989, but continued to provide support for it. Butcher represented that PAG would continue to support the engine. (Doc. 113 at 102-04.)

In October 1998, the LBA, the German equivalent of the FAA, issued an Airworthiness Directive warning owners of aircraft containing the Porsche PFM engines about valve spring fatigue failures. (Doc. 134-5.) The FAA followed suit in early 1999. (Doc. 134-7.) PAG issued a Service Bulletin stating that the valve springs would be replaced immediately with valve springs of the old design, but that a new valve spring assembly was being developed by PAG. (Doc. 134- 8.) Shortly thereafter, however, the Porsche Defendants began to notify owners that PAG would discontinue production of engine parts for the Porsche PFM engine.[1] (Doc. 113 Defendant's Ex.1 at 1; Doc. 57-6, -7, and -8.)

After the Porsche defendants announced withdrawal of support for the Porsche PFM engines, Timothy Coon, the President of Mod Works Aviation in Punta Gorda, Florida, approached Butcher about setting up a program to extend the service life of aircraft containing the Porsche PFM engine. (Doc. 113 at 97.) PAPI's board solicited ideas from other companies, but ultimately decided the Mod Works opportunity was best. (Doc. 113 at 98.) The Mod Works plan was to remove the Porsche PFM engines and replace them with a different engine already in use by Mooney in other aircraft. (Doc. 113 at 99.) The idea was that after the conversion the aircraft owners would have an engine that did not require PAG parts and was covered by a different warranty. (Doc. 113 at 99.)

---

[1] Although a PAG document says notice was provided in 2000, in the record there is a December 1995 letter from Butcher to Plaintiff Jack Williams stating PAG would "continue to supply spare parts and support through the year 2005." (Doc. 57-2.)

The contract for the conversion venture was entered into by Mod Works and PAPI. (Doc. 113 at 100.) PAPI agreed to pay a substantial amount of money for marketing costs and Supplemental Type Certificate ("STC") development. [2] (Doc. 113 Defendant's Exs. 1-4; Doc. 113 at 101.) PAPI also agreed to purchase the Porsche PFM engines removed during the conversion. (Doc. 113 at 101.) According to Butcher, PAPI and Mod Works "worked out the contracts and the monies involved and then...asked PAG if they would support...[the] venture," which PAG did. (Doc. 113 at 102, 120.)

Even before the conversion venture was finalized, the Porsche Defendants discussed and offered the conversion plan to owners of aircraft containing the Porsche PFM engine. In the late 1990s, Plaintiff Williams attended a Mooney Airplane Pilots Association convention in Las Vegas, during which Butcher discussed the conversion program. (Doc. 113 at 132; Doc. 134-3 at ¶4.) In his declaration, Williams states that a representative from PAG also was present and discussed the conversion program (Doc. 134 Ex. C at ¶ 4), but Butcher does not remember anyone from PAG being present (Doc. 113 at 133).

Plaintiff Linwood Johnson purchased a PFM Mooney some time after the summer of 2001, based in large part on Butcher's representations that installation of a different engine would improve aircraft performance and increase the aircraft's value. (Doc. 153-4 at ¶ 5.) Johnson signed an agreement in February 2002 for the conversion (Doc. 153-4 at ¶ 14), but the conversion was never performed. (Doc. 153-4 at ¶ 17.) At one point, Johnson paid $13,000.00 to have a former Porsche factory employee "fly to South Carolina from Germany to bring and install parts in [his] airplane in order to maintain its airworthiness." (Doc. 153-4 at ¶ 17.)

Adam Braun of Plaintiff AB Consulting, Inc. purchased a PFM Mooney in 1991. Butcher serviced the aircraft. Between 2001 and 2003, Butcher informed Braun that Porsche would no longer provide parts or services, and that his "only option was to have the Porsche engine replaced in Florida at a company set up by Porsche to install a different engine." (Doc. 153-3 at ¶ 3.) Braun signed an agreement

---

[2] To implement the conversion program, Mod Works had to obtain a STC from the FAA. (Doc. 113 at 100.)

to have the conversion performed, but "Porsche dropped the project and [his] airplane still has its original Porsche engine." (Doc. 153-3 at ¶ 4.) Braun is "not able to use [his] airplane now because [he] cannot get parts to maintain its airworthiness." (Doc. 153-3 at ¶ 6.)

Plaintiff Sheffield delivered his aircraft to Mod Works for conversion in June 2003, and picked up the aircraft in December 2003, with the conversion only partially completed. (Doc. 134-4 at ¶ 4.) Plaintiff Williams also converted his aircraft with Mod Works, and alleges significant problems with the aircraft since the conversion. (Doc. 134-3 at ¶ 6.)

In 2003, Butcher informed Frank Collinson, the general partner of Plaintiff Peter Collinson Family, LP, owner of a PFM Mooney, that Porsche would not provide parts or service for the Porsche engines, and that his "only option" "was to surrender [his] Porsche engine to Porsche." (Doc. 153-1 at ¶ 3.) Collinson entered into an agreement with Mod Works. Much of the conversion had been completed when Hurricane Charley passed through Punta Gorda and interrupted the conversion. (Doc. 153-1 at ¶¶ 4-5.) Collinson had to negotiate "among three different aircraft maintenance firms, including Mod Works, and pay out another $35,000.00 to get the work completed." (Doc. 153-1 at ¶5.) The entire process took five years, during which time the aircraft remained in Florida. Collinson states the useful load of the aircraft was so reduced by the conversion that the aircraft does not have the same value. (Doc. 153-1 at ¶¶ 5-6.)

Plaintiff Chuck Hoffman owns two PFM Mooneys, one in his name and one in the name of Plaintiff Pacific Aeromarine, Inc. (Doc. 153-2 at ¶ 3.) Before purchasing the aircraft, he knew of the Mod Works conversion plan. (Doc. 153-2 at ¶ 5.) The information he received from Mod Works (and Butcher), "promised improved performance and greater value for the airplanes." (Doc. 153-2 at ¶ 6.) He signed a contract for an engine conversion on the aircraft owned in the name of Pacific Aeromarine. The conversion was completed in Florida. (Doc. 153-2 at ¶ 7.) The Porsche engine that was removed was destroyed by Porsche. (Doc. 153-2 at ¶ 8.) Hoffman states the converted airplane is slower than it was

represented it would be and "does not have a sufficient useful load, essentially making the airplane useless, except for a pilot who would want to fly around alone." (Doc. 153-2 at ¶ 8.)

The conversion program terminated when Hurricane Charley destroyed the Mod Works facility in August 2004. (Doc. 134 at ¶ 68.) PAG stopped selling Porsche PFM engine parts at the end of May 2005 (Doc. 113 at 87), and PAPI became inactive. (Doc. 113 at 133.) In October 2007, PAG surrendered its TC for the PFM 3200 engine. Plaintiffs allege PAG "did not provide to the FAA or anyone else the technical data necessary to manufacture spare parts," thereby creating an unsafe condition. (Doc. 135 at ¶ 45.)

Plaintiffs brought this diversity action, asserting various claims relating to the Porsche engines. PAG and Gary Butcher each moved to dismiss the claims against them for lack of personal jurisdiction. This Court denied Butcher's motion, finding the existence of personal jurisdiction over him. (Doc. 46.) As to PAG's motion, this Court deferred ruling on the motion and referred it to United States Magistrate Judge Pizzo for a hearing and Report and Recommendation. (Doc. 147.) This Court adopted Magistrate Judge Pizzo's Report and Recommendation to deny PAG's motion to dismiss by an order entered on October 7, 2010. (Doc 167.)

Porsche filed a Motion for Summary Judgment (Doc. 184) on November 15, 2010, in which this Court must now rule. While all Plaintiffs filed their response thereto on December 20, 2010, the Court notes that there are two separate groups of Plaintiffs, each with their own amended complaint. The first group consists of PFM Air, Inc., Goedicke Inc. of America, Peter Collinson Family, LP, AB Consulting, Inc., Pacific Aeromarine, Inc., Chuck Hoffman, and Elmer Linwood Johnson ("PFM Plaintiffs"). In their Amended Complaint (Doc. 135), Plaintiffs assert claims of negligent conduct causing harm, intentional conduct causing harm, and violation of the Florida Deceptive and Unfair Trade Practices Act § 501.201, et seq. ("FDUTPA"). The main bases for PFM Plaintiffs' claims, but not their only bases, are Defendants' failure to correct mechanical problems, destruction of spare parts, destruction of airplane engines, discontinuation of the manufacturing of spare parts, surrendering of the type certificate without

providing the technical data someone else would need to manufacture spare parts, and Porsche's solicitation to replace the PFM 3200 engine. (Doc. 135.) PFM Plaintiffs seek actual and punitive damages, as well as attorneys' fees, costs, and interest.

The second group of Plaintiffs consists of Jack Williams and Doug Sheffield ("Williams and Sheffield"). In their Amended Complaint (Doc. 134), they assert claims of: (1) fraud in the inducement as to numerous representations made by the Porsche Defendants; (2) negligence, including in design, manufacture, marketing, implementation of safety program, product support, and maintenance; (3) gross negligence as to implementation of safety program, product support, and maintenance; (4) breach of express warranty; (5) breach of implied warranty pursuant to UCC Article II and Fla. Stat. § 672.314 et seq.; (6) violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 et seq.; (7) strict product liability; (8) conspiracy to commit fraud; (9) conspiracy to fraudulently conceal; (10) promissory estoppel relating to representations in connection with the Porsche PFM engine and conversion program; (11) unjust enrichment/restitution; and (12) alter ego/single business enterprise. (Doc. 134). Williams and Sheffield seek actual and punitive damages, as well as restitution and/or disgorgement, attorneys' fees, costs, and interest.

II.   Discussion

*1. Standard of Review*

Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

> The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

7

The appropriate substantive law will guide the determination of which facts are material and which facts are...irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11ᵗʰ Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *See Anderson*, 477 U.S. at 248. But, "[i]f the evidence is merely colorable...or is not significantly probative...summary judgment may be granted." *Id.* at 249-50.

### 2. *Porsche's SJ Motion*

Porsche asserts that each of Plaintiffs' claims should be dismissed as they are both untimely and barred as a matter of law. More specifically, Porsche maintains three grounds for which Plaintiffs' claims should be dismissed: (1) Plaintiffs' claims are time barred by statutes of repose, limitations, and the expiration of Porsche's written warranty; (2) Plaintiffs' claims are legally barred by the economic loss rule and Plaintiff's failure to show either reliance or causation of damages; and, (3) Defendants had no legal duty to continue either manufacturing parts or providing service, barring Plaintiffs' tort claims as a matter of law. This Court will take Porsche's asserted grounds for summary judgment in order.

### 3. *Claims are not time barred*

Pursuant to the twelve year statute of repose in Fla. Stat. § 95.031, and the eighteen year statute of repose in the General Aviation and Revitalization Act ("GARA") 49 U.S.C. § 40101 (2000), Porsche alleges that Plaintiffs' claims are untimely and, therefore, barred. Furthermore, Porsche also maintains that pursuant to Fla. Stat. § 95.11(3) Plaintiffs' claims are barred by a four year statute of limitations as PFM engine owners were informed that Porsche was withdrawing from the aviation industry in the late 1990s, and in no event later than 2002, when the Plaintiffs entered into the conversion program with Mod Works. The present action was filed in February of 2008. Porsche also notes that the express warranty for one year on all parts and equipment, five years on cost assurance for maintenance and repairs, and ten

8

years for a remanufactured engine, expired long ago as each airplane at issue was originally purchased on or before September 1989. (Doc. 184-2 at p. 60-72.)

Turning first to the twelve year statute of repose in Fla. Stat. § 95.031, Fla. Stat § 95.031(1) provides, "A cause of action accrues when the last element constituting the cause of action occurs…" While Porsche relies on Fla. Stat § 95.031(2)(a) and argues that any action for fraud must have begun within twelve years after the date of the commission of the alleged fraud, regardless of the date the fraud was or should have been discovered, this Court under the "last element" rule established in § 95.031(1) finds such an argument unconvincing. Plaintiffs contend that the last element of their claims occurred no earlier than October 26, 2007, when Porsche surrendered its TC for the PFM 3200 engine to the European regulatory agency, EASA. (Doc. 205-11). It was not until Porsche surrendered their European TC that the Plaintiffs were put on notice that their airplanes would never be fully converted. In addition, Plaintiffs allege that the date the conversion program was terminated is after January 17, 2006, which was the date Porsche AG directed PAPI to terminate the contract with Mod Works as established in a letter dated November 22, 2005, from PCNA's general counsel, Patricia R. Britton, to Tim Coons. (Doc. 205-12). In consideration of such evidence, and under the "last element" rule under § 95.031(1), Plaintiffs' claims are not barred by the twelve year statute of repose, as all facts must be construed in favor of the non-moving Plaintiffs. In light of the above evidence, the date of the commission of the alleged fraud may be found by a reasonable jury to have been January 17, 2006, which would not bar the Plaintiffs claims as a matter of timeliness.

GARA places an eighteen year statute of repose on "civil action(s) for damages for death or injury to persons or damage to property arising out of an accident involving a general aviation aircraft…" 49 U.S.C. § 40101, Note § 2(a)(1). As Plaintiffs point out, none of their claims arise out of an accident but instead arise out of the incomplete conversion of their aircrafts. GARA's inapplicability becomes evident upon examination of Porsche's reliance on case law that exclusively deals with aircraft accidents. For instance, Porsche relies upon *Carson v. Helitech, Inc.*, 2003 WL 22469919 at *3 (M.D. Fla. Sept. 25,

2003) as illustrative of GARA's ability to bar claims. While some claims were indeed barred in *Carson* pursuant to GARA, the accident involved a helicopter crashing into the roof of a building in Ft. Myers, Florida, causing serious injury to the pilot. *Id.* at 2; *See also Caldwell v. Enstrom Helicopter Corp.*, 230 F.3d 1155, 1156 (9th Cir. 2000) (helicopter accident); *Lyon v. Aqusta S.P.A.*, 252 F.3d 1078, 1081 ((9th Cir. 2001) (airplane accident); *Altseimer v. Bell Helicopter Textron*, 919 F. Supp. 340, 341 (E.D. Cal. 1996), *appeal dismissed*, 120 F.3d 268 (9th Cir. 1997) (helicopter accident); *Alter v. Bell Helicopter Textron*, 944 F. Supp. 531, 536 (S.D. Tex. 1996) (helicopter accident). Thus, GARA is not applicable to the case *sub judice* as there has been no "civil action(s) for damages for death or injury to persons or damage to property arising out of an accident involving a general aviation aircraft..." 49 U.S.C. § 40101, Note § 2(a)(1).

Porsche next challenges the Plaintiffs' claims under Fla. Stat § 95.11(3), which establishes a four year applicable limitation period for fraud, injury to personal property, negligence, products liability, and unfair trade practices. Likewise, Porsche challenges under Fla. Stat. § 95.11(2), which establishes a five year limitation period for claims on a written contract. It is Porsche's contention that Plaintiffs knew, or should have known, that they could have made claims as to the Defendants' withdrawal from the aviation industry as early as 1995, when Porsche informed its customers that it would no longer sustain the infrastructure required to support the PFM 3200 engines and that neither parts nor related engine services will be available after May 31, 2005. (Doc. 184-2 at p.75). However, the failure to convert Plaintiffs' airplanes is the foundation giving rise to this suit, not the mere withdrawal by Porsche from the aviation industry. The unsafe condition of the existing engine and Porsche's actions to establish a conversion program, a program that was never fully completed, is the crux of the present action. This Court notes that Mod Works ceased the conversion program upon their facilities being destroyed by Hurricane Charley on or around August 13, 2004. There was no way for either group of Plaintiffs to have known the conversion program would not be completed until after this date, and, thus, this too may constitute the "last element"

10

under § 95.031(1). This Court finds that no tort claims of either group of plaintiffs may be extinguished as untimely.

### 4. Breach of Warranty

The language of the Warranty and Customer Assurance Program provided with each PFM engine (Doc. 184-2 at p. 65) states as follows:

> THIS LIMITED WARRANTY IS EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES AND REPRESENTATIONS, EXPRESS OR IMPLIED OR STATUTORY, WHETHER WRITTEN OR ORAL, OR MERCHANTABILITY, ANY IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE, AND ANY OTHER IMPLIED WARRANTY ARISING FROM ANY COURSE OF PERFORMANCE OR DEALING OF TRADE USAGE. THIS LIMITED WARRANTY IS ALSO IN LIEU OF ANY OTHER OBLIGATION, LIABILITY, RIGHT OR CLAIM, WHETHER IN CONTRACT OR IN TORT, INCLUDING ANY RIGHT IN STRICT LIABILITY IN TORT OR ANY RIGHT ARISING FROM NEGLIGENCE ON THE PART OF PROSCHE AVIATION.

Fla. Stat. § 672.316(2) states that, "to exclude or modify the implied warranty of merchantability or any part of it, the language must mention merchantability and in case of a writing must be conspicuous; and, to exclude or modify any implied warranty of fitness, the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."" Furthermore, the express warranty was for one year on all parts and equipment, five years on cost assurance for maintenance and repairs, and ten years for a remanufactured engine. (Doc 184-2 at p. 66-72). This Court finds that the breach of express and implied warranty claims are hereby dismissed as the warranty expired no later than ten years from the original date of purchase by previous owners which was on or around September of 1989.

### 5. Economic Loss Rule

In this state, the economic loss rule has been applied in two different circumstances. The first is when the parties are in contractual privity and one party seeks to recover damages in tort for matters arising

from the contract. The second is when there is a defect in a product that causes damage to the product but causes no personal injury or damage to other property. *Indemnity Ins. Co. of North America v. American Aviation, Inc.,* 891 So.2d 532, 536 (Fla. 2004). Accordingly, courts have held that a tort action is barred where a defendant has not committed a breach of duty apart from a breach of contract. *See, e.g., Electronic Sec. Sys. Corp. v. Southern Bell Tel. & Tel. Co.,* 482 So.2d 518, 519 (Fla. 3d DCA 1986) (stating that "breach of contract, alone, cannot constitute a cause of action in tort ... [and][i]t is only when the breach of contract is attended by some additional conduct which amounts to an independent tort that such breach can constitute negligence." Although parties in privity of contract are generally prohibited from recovering in tort for economic damages, courts have permitted an action for such recovery in certain limited circumstances. One involves torts committed independently of the contract breach, such as fraud in the inducement. For example, in *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.,* 685 So.2d 1238 (Fla.1996), the Court stated:

> The economic loss rule has not eliminated causes of action based upon torts independent of the contractual breach even though there exists a breach of contract action. Where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from the acts that breached the contract. Fraudulent inducement is an independent tort in that it requires proof of facts separate and distinct from the breach of contract.

*Id.* at 1239 (citations omitted). In the instant case, both sets of Plaintiffs have asserted tort-based claims that do not arise out of any contract. More specifically, both sets of Plaintiffs allege causes of action relating to the alleged misrepresentations regarding the engine conversion program and Porsche's failure to provide a feasible replacement. As such, the economic loss rule cannot extinguish tort claims which are independent from the breach of contract, a situation which presently exists in the instant case. The first instance in which the economic loss rule may apply, when the parties are in contractual privity and one party seeks to recover damages in tort for matters arising from the contract, is not applicable. Porsche has asserted both that the parties are and are not in contractual privity. (Compare Answer at ¶70 and Doc. 184).

12

> **No Privity of Contract:** PFM Air, Inc., Goedicke, Inc. of America, AB Consulting, Inc., and Pacific Aeromarine, Inc., did not exist in 1990 when AG terminated production of the PFM engines that are the subject of this action. Thus, the corporate Plaintiffs were not the original buyers of the aircraft and were not in privity with Defendants.

(Doc. 144 at ¶70.)

> The Plaintiffs – as PFM Engine owners – were parties to the transferable Warranty and Customer Assurance Program. That contractual warranty therefore governed the relationship between the Plaintiffs and the Defendants regarding alleged defects or issues with the PFM Engine, and Plaintiffs may not avoid the terms of that Warranty by simply recasting their claims under a different name.
> In other words, the Plaintiffs and Defendants were in direct privity under the Warranty and Customer Assurance Program for all alleged defects regarding the PFM Engine

(Doc. 184 at 22.) As such, the first instance in which the economic loss rule may bar a Plaintiffs' claims is not applicable, as all facts must be construed in favor of the non-moving Plaintiffs and the issue as to whether or not a contract was in existence must be resolved at trial.

Plaintiffs assert claims based on alleged misrepresentations concerning the engine conversion program and eventually the failed and partial conversion of their aircrafts. "It would be incongruous for us to hold that the economic loss rule, with its central purpose of restricting a party to the recovery of purely economic damages suffered in a contractual setting, can be used to prevent a consumer from invoking the expanded remedies of the FDUTPA in the same setting when the FDUTPA allows only for the recovery of the same type of damages." *Delgado v. J.W. Courtesy Pontiac GMC-Truck,* 693 So. 2d 602, 610-11 (Fla. 2d DCA 1997). The *Delgado* court held that the trial court erred in determining that the economic loss rule eliminated the appellants' claim brought under the FDUTPA. *Id* at 611. Therefore, both group of Plaintiffs' claims under Fla. Stat. §501.201 et seq. remain viable. The *Delgado* court went on to state that the incongruity of such a holding would again frustrate the will of the legislature by limiting liability for deceptive and unfair trade practices and acts occurring within the context of a written consumer

sales contract and would be in direct contravention of public policy. *Id.* As previously stated, Porsche has contradicted whether or not the parties were in contractual privity in comparing their Answer (Doc. 144) and their Summary Judgment Motion (Doc. 184). Taking all facts in favor of the non-moving party, the economic loss rule cannot bar the claims, at this juncture, in fact, as whether or not the parties are in contractual privity is an issue that must be established at trial.

As this Court has already extinguished the breach of express and implied warranty causes of action advanced by Williams and Sheffield, the intentional or negligent acts of Porsche to not fully convert the engines does not arise solely from a contract but from their acts. The only contract in which Porsche asserts that the economic loss rule should apply is from the Warranty and Customer Assurance Program. Plaintiffs' claims are grounded on misrepresentations made by Porsche concerning the engine conversion program independent from the Warranty and Customer Assurance Program and are, therefore, not barred by the economic loss rule. Even if a contract were to be found to exist, claims for economic damage based on fraud in the inducement, conversion, and civil theft are independent torts and, thus, actionable despite existence of contract between the parties. *Pershing Indus., Inc. v. Estate of Sanz*, 740 So.2d 1246, 1248 (Fla. 2d DCA 1999).

It must be noted that only one group of Plaintiffs, Williams and Sheffield, assert strict product liability as a cause of action. This Court notes that the PFM Plaintiffs do not assert any product liability claims, and as such, the economic loss rule does not apply to them for all the reasons set forth above. As opposed to the contractual privity economic rule addressed above, the products liability economic loss rule does not hinge on the existence of a contract, but on whether the product causes personal injury or harm beyond that of itself. As such, Williams' and Sheffield's strict liability claim is addressed below.

"The distinction that the law has drawn between tort recovery for physical injuries and warranty recovery for economic loss is not arbitrary and does not rest on the 'luck' of one plaintiff in having an accident causing physical injury. The distinction rests, rather, on an understanding of the nature of the

14

responsibility a manufacturer must undertake in distributing his products." *Seely v. White Motor Co.,* 63 Cal.2d, at 18, 45 Cal.Rptr., at 23, 403 P.2d, at 151. In *East River S.S. Corp. v. Transamerica Deleval, Inc.,* 106 S.Ct. 2295, 2304 (1986), defective turbine components allegedly injured only the turbines themselves, and therefore, the court held that a strict products-liability theory of recovery was unavailable to the charterers. Relying on *Seely* and *East River,* the Supreme Court of Florida adopted the product liability economic loss rule in *Florida Power and Light Co. v. Westinghouse Electric Corp.,* 510 So.2d 899, 902 (Fla.1987). In determining whether Florida law permitted FPL to recover the economic losses in tort without a claim for personal injury or separate property damage, the Court considered the policy issues supporting the application of a rule that limits tort recovery for economic losses when a product damages itself. *Id.* at 900. Concluding that warranty law was more appropriate than tort law for resolving economic losses in this context, the Court adopted the holding in *East River* that "a manufacturer in a commercial relationship has no duty under either a negligence or strict product liability theory to prevent a product from injuring itself." *Id.* at 901 (quoting *East River,* 106 S.Ct. 2295, at 2302.) As such, Williams' and Sheffield's claim for strict product liability may not proceed. There are no facts in the record, and Williams and Sheffield advance no facts, that either plaintiff suffered personal injury as a result of the defective engine within their aircraft. Furthermore, the engine did not cause any additional property harm to their aircraft. Under the theory of negligence, Plaintiffs are allowed to proceed as the facts giving rise to such a claim do not arise from the defective engine alone, but from Porsche's failure to provide Plaintiffs with a PFM replacement engine and parts. Thus, the negligence theory remains viable as the theory it is based upon Porsche's failure to properly convert the Plaintiffs airplanes and not from a product liability standpoint, as established below.

6.  *Whether a Duty Exists*

It is basic tort law that a duty of care may arise under all facts of a case and that a defendant can create a duty by its conduct. *See Restatement (Second) of Torts, §285; Nat'l Title Ins. Co. v. Lakeshore 1 Condominium Assoc.,* 691 So. 2d 1104, 1106 (Fla. 3d DCA 1997). Through Porsche's conduct of

budgeting $3-$5 million dollars for the conversion program, a jury might reasonably find that Porsche established a duty to either support the existing Porsche engine or to convert the Plaintiffs engines to a safer alternative due to the faulty valve springs. Furthermore, Porsche contends that they had no legal duty to continue either manufacturing spare parts or providing service or support for the PFM engine and were thus permitted to withdraw from the aviation industry by simply surrendering their TC. While Porsche frames the issue as the Plaintiffs alleging their private airplanes have lost value as a result of Porsche's withdrawal from the aviation industry and lawful decision to cease manufacturing supplies, this Court does not agree. While it *may* be true that Porsche had no duty to provide a conversion program and simply surrender their TC and withdraw from the aviation industry, that is not what Porsche did. Porsche instead contracted with Mod Works to implement their conversion program of the Plaintiffs airplanes, a conversion program that was never completed. Mod Works, acting as Porches' agent, was responsible for the engine conversion and, thus, all Plaintiffs negligence claims remain viable, as all disputed facts must be construed in favor of the Plaintiff groups.

Furthermore, evidence exists that Porsche knew the conversion program was not going to be successful. Prior to choosing a company to implement the engine conversions Porsche requested written proposals. One of those companies was Americana who submitted a "feasibility study" discussing the practicality of replacing the Porsche engines with a TCM IO-550 engine. (Doc. 205-7.) Americana's feasibility study concluded that such a conversion to the TCM IO-550 was not feasible because "...there are limitations to safety and economics that would not be acceptable" if Porsche chose to convert its engine to the TCM IO-550 engine. (Doc. 205-7 at p.14) Porsche chose to ignore the feasibility study prepared by Americana and hired Mod Works to replace the existing PFM 3200 engines with the TCM IO-550, having knowledge that such a conversion was not feasible. Specifically, the feasibility study concludes by recommending that, "Another engine closer to or less then the powerplant weight of the Porsche 3200 engine would be advisable. A typical engine would be the TCM IO-360-ES or TSIO-360-SB or Lycoming IO-360 or TIO-360 engines." (Doc. 205-7 at p. 14.) While Porsche may maintain they

16

had no control over Mod Works, the previously referenced letter from Patricia Britton, Esq., to Timothy

Coons, owner of Mod Works, dated Nov. 22, 2005, states as follows:

> As you know, Mod Works, Inc. ("Mod Works") is party to the Aircraft Engine Services
> and Repurchase Agreement ("Agreement") between Mod Works and Porsche Aviation
> Products, Inc. ("PAPI") dated as of December 17, 2001, as subsequently amended. You
> have told us that, after the hurricanes which occurred in the fall of 2004, Mod Works, Inc.
> is unable to continue providing services under the Agreement. Mod Works has been
> unable to perform under the Agreement for the last year and the parties have treated the
> Agreement as terminated. Mod Works' inability to perform is a material breach of the
> Agreement, justifying the termination of the Agreement by PAPI in accordance with the
> paragraph 6b of the Agreement. To the extent not previously terminated, the Agreement
> shall be deemed terminated on the 60th day from your receipt hereof, as receipt is defined
> in the agreement.

(Doc. 205-12.)

This letter at least establishes a nexus between Porsche and Mod Works and the existence of some degree

of control exercised by Porsche over Mod Works. Again under Florida's "last element rule", this further

supports that both set of Plaintiffs' claims are timely. Plaintiffs did not receive knowledge that Porsche

would no longer convert their engines until the TCs were surrendered or when the conversion program

was terminated. The basis of the harm alleged by all Plaintiffs is that Porsche breached its duty to either

support the PFM engines or provide a feasible replacement, a basis that is supported by the above

evidence when construed in favor of the non-movant.

Further evidence can be found within statements made by Defendant Gary Butcher. Mr. Butcher

was at all relevant times an employee of PCNA or PAPI. PAG ceased production of the engine in about

1989, but continued to provide support for it through a conversion program with Mod Works. Butcher

represented that PAG would continue to support the engine. (Doc. 113 at p. 102-04.) According to

Butcher, PAG ultimately funded PAPI's end of the conversion project. (Doc. 113 at p. 102, 116).

Furthermore, contained within Williams' declaration, he states at a Mooney Airplane Pilots Association

("MAPA") convention in Las Vegas he was informed that the conversion program was being

implemented and conducted by a group out of Florida called Mod Works by Timothy Coons at the

direction of Porsche AG. (Doc. 134-3 at ¶3.) Mr. Williams goes on to declare that Gary Butcher, who was known to Mr. Williams to be a representative of PAG and other Porsche entities, discussed the conversion program and the various aspects of it. (Doc. 134-3 at. ¶4.) Again, taking all facts in favor of the non moving party, such evidence may be found by a reasonable jury to establish a duty on behalf of Porsche. PAG funded the conversion project on behalf of PAPI, and Mr. Butcher was an employee of PCNA or PAPI at all times relevant to the suit, and therefore, Mr. Butcher's representations to the Porsche airplane owners may be found to establish a duty on behalf of Porsche by a reasonable jury.

    7. *Unjust Enrichment*

        The elements of a cause of action for unjust enrichment are: (1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff. *Henry M. Butler Inc. v. Trizec Properties Inc.,* 524 So.2d 710 (Fla. 2d DCA 1988). Within the Williams and Sheffield complaint, they allege that Porsche aircraft powered with PFM engines conferred a benefit to Porsche Defendants by radically overpaying for PFM N01 and N03 engine replacement parts, Porsche voluntarily accepted and retained these overpayments, and as a result of the unconscionable pricing, it would be inequitable for Porsche Defendants to retain this money, specifically because the PFM engines were not defect free or fit for the ordinary purpose for which there were to be used, or safe for said purpose. This Court finds that the all elements of unjust enrichment have been plead sufficiently. Again, viewing the evidence in favor of the non-moving Plaintiffs, a spark plug once valued at approximately $30 in 1999 was sold for $110 in 2002, and subsequently for $284 in 2005. (Doc. 212-12.) While there may be good reason for such a price increase, Porsche has failed to advance any such reasoning, and, therefore, the Williams and Sheffield Plaintiffs' claim for unjust enrichment must remain viable.

    In regards to Porsche's contention that pursuant to Fed.R.Civ.P. 9(b), Plaintiffs are required to allege each of their fraud and intentional torts claims with "particularity" to "the circumstances constituting

18

fraud or mistake," this Court has already addressed the issue. (Doc. 46.) As such, this Court will not revisit the issue. Porsche also asserts that Plaintiffs have failed to show causation of quantifiable and recoverable damages. "Under the certainty rule, which applies in both contract and tort actions, recovery is denied where the fact of damages and the extent of damages cannot be established within a reasonable degree of certainty." *Miller v. Allstate Ins. Co.,* 573 So.2d 24, 27-28 (Fla. 3d DCA 1990) (citing Restatement (Second) of Contracts § 352 (1981); Restatement (Second) of Torts § 912 (1982)); *McCall v. Sherbill,* 68 So.2d 362 (Fla.1953); *accord* Richard A. Lord, *Williston on Contracts* § 64:8 ("The amount of damages must be established with reasonable, not absolute, certainty....It is sufficient if a reasonable basis for computation of damages is afforded, even though the result will only be approximate." (footnotes omitted)).   Turning to the record, the remanufactured aircraft was quoted as selling between $275,000.00- $300,000.00, which was compared to a 1998 Ovation of 1997 Bonanza. (Doc. 205-13 at p.9.) A letter dated January 7th, 2002, from Timothy Coons, president of Mod Works (Doc. 184-2 at p. 81-82), made several representations regarding the aircraft and future value, such as, "I have worked with Gary and other Porsche representatives for nearly two years developing a program to protect the value of the aircraft by certifying a replacement engine", "The first goal is to greatly enhance the resale value of PFM's by converting the engine and modernizing the remaining airframe", and "The engineering investment and engine buy back will protect PFM's market value by establishing a market for the PFM comparable to a 3-5 year old Ovation of Bonanza." Mr. Coons goes on to make an immediate offer to purchase the aircrafts for remanufacture into a Trophy Phoenix PFM and states that he is offering near retail for the aircraft and will adjust the value for improvements owners have made over the past five years. This Court finds that such evidence allows damages to be established within a reasonable degree of certainty, although some issues regarding damages do remain. This Court is concerned about how damages are to be calculated. However, it is possible that damages may be calculated by taking the difference of what the Plaintiffs' airplanes would have been worth if fully converted against their present value, in addition to any costs absorbed by the Plaintiffs in attempting to convert the aircraft, in addition to punitive damages if awarded by a jury. The record reflects that different airplane owners have paid

different amounts in attempting to have their airplanes converted, and as such, a blanket provision for damages as to all Plaintiffs is not proper in the instant case. The issue of damages becomes even more complex as different plaintiffs have different out of pocket expenses, and have asserted different causes of action. The Plaintiffs and Porsche are not in agreement as to what the value of the airplanes are or were, thus, even further complicating the issue. However, this issue need not be resolved at this time and may be addressed at trial.

III.     Conclusion

Williams and Sheffield allege twelve total counts, many of which are based on the same or similar facts. As such, this Court is consolidating count two for negligence and count three for gross negligence as a single negligence cause of action. Furthermore, Plaintiffs allege in count one fraud, count eight conspiracy to commit fraud, and in count nine conspiracy to fraudulently conceal. This Court will allow the Plaintiffs to go forward with a single fraud and single conspiracy cause of action. In count ten, Williams and Sheffield allege promissory estoppel; however, this Court finds that such artful pleading essentially boils down to a single cause of action for fraud and hereby extinguishes promissory estoppel as a separate cause of action. As previously established above, unjust enrichment has been plead successfully and also remains viable, in addition to count six pursuant to violation of Fla. Stat. § 501.201 et seq. That would leave Williams and Sheffield with count twelve alleging alter ego/single business enterprise, which is a vehicle for piercing the corporate veil and assessing damages, not a cause of action. As such, Williams and Sheffield are left with a claim for negligence, fraud, conspiracy, unjust enrichment, and violation of Fla. Stat. § 501.201 et seq. for all the reasons set forth above. Their claims for breach of express warranty, breach of implied warranty, and strict product liability are hereby dismissed.

In regards to the PFM Plaintiffs, consisting of PFM Air, Inc. ("PFM"), AB Consulting ("AB"), Goedicke Inc. of America ("Goedicke"), Pacific Aeromarine, Inc. ("Pacific"), Peter Collinson Family, LP

20

("Collinson"), Chuck Hoffman ("Hoffman"), and Elmer Linwood Johnson ("Johnson") (collectively "PFM Plaintiffs"), their claims for negligent conduct causing harm, intentional conduct causing harm, and unfair or deceptive acts or practices in the conduct of any trade or business pursuant to § 501.201, et seq. ("FDUTPA") remain viable, for all the reasons set forth above. Accordingly, it is:

**ORDERED** that Defendant's, Dr. Ing. hc. F. Porsche Aktiengesellschaft ("Porsche AG"), Porsche Cars North American, Inc. ("PCNA"), Porsche Aviation Products, Inc. ("PAPI"), and Gary Butcher ("Butcher") (collectively "Porsche"), Motion for Summary Judgment and Supporting Memorandum of Law (Doc. 184) be **GRANTED IN PART AND DENIED IN PART**. The Williams and Sheffield Plaintiffs may proceed under theories of negligence, fraud, conspiracy, unjust enrichment, and violation of Fla. Stat. § 501.201 et seq. The PFM Plaintiffs may proceed under claims for negligence causing harm, intentional conduct causing harm, and their Fla. Stat. § 501.201 et seq. claims.

**DONE AND ORDERED** in Chambers at Tampa, Florida, this 26 day of January, 2011.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All parties and counsel of record.